1403

ESTATE OF Charles D. BARR, Jr.: Nancy B. Carson, individually and as Co-Executrix of Will of Charles D. Barr, Jr., Respondent v. Carolyn B. CARSON, individually and as Co-Executrix of the Will of Charles D. Barr, Jr., and William R. Carson, Jr., Appellants.

(386 S. E. (2d) 791)

Court of Appeals

*H. Hugh Rogers*, of *Rogers, Duncan, Fullwood & Derrick*, Lexington; and *Theodore B. Guerard*, of *Haynsworth, Marion, McKay & Guerard*, Charleston, *for appellants.*

*Thomas T. Moore* and *James M. Brailsford, III*, both of *Robinson, McFadden, Moore, Pope, Williams, Taylor & Brailsford*, Columbia, *for respondent.*

Heard Sept. 20, 1989.

Decided Oct. 30, 1989.

SHAW, Judge:

Respondent, Nancy B. Carson, Co-Executrix of the estate of Charles D. Barr, petitioned the probate court, on behalf of the estate, for the return of 103 shares of stock from her sister and co-executrix, Carolyn B. Carson and her sister's husband, William R. Carson, Jr. The Probate Judge denied the relief. The Circuit Court reversed, ordering the return of

the stock to the estate for distribution under Mr. Barr's will. Carolyn and William Carson appeal. We affirm.

Charles D. Barr, Jr. was the founder of Imperial Casket Company, Inc., now known as Imperial Woodlands, Inc. Mr. Barr had two daughters, Carolyn who married William Carson, Jr., and Nancy who married C. A. Carson. Carolyn and William were active in the family business.

On October 28, 1975, Mr. Barr went to his CPA's office and requested issuance of a certificate for 103 shares of stock in the family business to William which he had agreed to sell to William at book value. Mr. Barr endorsed the certificate and took the stock book containing the new certificate and returned it to the safe at the family business. He did not inform Carolyn nor William of his actions.

In early December, 1975, Mr. Barr suffered a stroke resulting in incompetency. On January 16, 1976, Carolyn and Nancy were appointed Committees for Mr. Barr.

In November, 1978, the CPA was asked to verify all the assets of the comitteeship. The CPA could not locate the subject 103 shares although the committeeship had been receiving the dividends from these shares. The CPA contacted William about the discrepancy who later discovered the stock book and new certificate in the safe. Upon discovery, Carolyn and William signed the new certificate as officers of the company. The 103 shares continued to be reflected as assets of the committeeship and were included in the assets of the estate of Mr. Barr who passed away January 9, 1980.

At trial, no one argued Mr. Barr intended the 103 shares to be a gift to William. Nancy contended the transaction was a part of a purchase agreement which was never completed because William never paid for the stock and it was never delivered to him. Carolyn and William argued that the consideration for the stock had been previously paid as a result of a February 1975 land deal between Carolyn and Mr. Barr. Over timely objection, under the Dead Man's Statute, the Probate Judge allowed the testimony of Carolyn and William that Carolyn and Mr. Barr had swapped land and Carolyn's land had been worth $100,000 more than that of Mr. Barr. They also contended Mr. Barr, at Carolyn's request, agreed to transfer the 103 shares to William in pay-

ment of the $100,000 difference. The deeds recite consideration of $5.00 and land. They do not recite any additional consideration.

In a brief order, the Probate Judge ruled that William owned the stock and the estate of Mr. Barr had no interest therein. Thereafter, Nancy appealed to the Circuit Court which reversed the Probate Court order finding the testimony regarding the land swap was inadmissible both under the Dead Man's Statute and the parol evidence rule and, further, there was no delivery of the stock certificate as required by statutory law.

S. C. Code Ann. § 36-8-309 (1976) provides:

> An indorsement of a security whether special or in blank does not constitute a transfer until delivery of the security on which it appears or if the indorsement is on a separate document until delivery of both the document and the security.

Under the official comments of this section, a notation is made for the definitional cross reference of the word "delivery." S. C. Code Ann. § 36-1-201(14), 1976) states:

> "Delivery" with respect to instruments, documents of title, chattel paper or securities means voluntary transfer of possession.

While it is undisputed that William had access to the safe, Mr. Barr, likewise had access to the safe for he, himself, placed the certificate and stock book in the safe where they were routinely kept. This, coupled with the fact that Mr. Barr never informed William of his actions, show there was no "voluntary transfer of possession." We hold there was no delivery of the security as required by the statute and thus affirm the Circuit Court on this basis. We therefore need not reach the issue of the Dead Man's Statute and the parol evidence rule.

The order of the Circuit Court is

Affirmed.

BELL and CURETON, JJ., concur.